IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| BARBARA A. SHUTTLEWORTH, | |
| Plaintiff, | No. 17-CV-34-LRR |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

_____

The claimant, Barbara A. Shuttleworth ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 ("Act"), and for supplemental security income under Title XVI of the Act. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the following reasons, I respectfully recommend that the Court **reverse and remand** the ALJ's decision.

## I. BACKGROUND

The Court adopts the facts as set forth in the parties' Joint Statement of Facts and, therefore, will summarize only the pertinent facts. (Doc. 11). Claimant was 42 years old when she allegedly became disabled and 55 years old at the time of the ALJ's decision. (*Id.*, at 2; AR 8-25).[1] Claimant completed high school and has past relevant work as a hand packager. (AR 23).

---

[1] "AR" refers to the administrative record below.

On October 15, 2012, claimant filed an application for disability and disability insurance benefits. (AR 11). On November 1, 2012, claimant protectively filed an application for supplemental security income. (*Id.*). The alleged disability onset date in both applications was October 1, 2002. (*Id.*). On April 16, 2014, ALJ Tela L. Gatewood held a hearing. (*Id.*). On November 23, 2015, ALJ Timothy G. Stueve held a supplemental hearing, and on December 18, 2015, ALJ Stueve found claimant was not disabled. (*Id.*). On February 9, 2017, the Appeals Council denied claimant's request for review. (AR 1-4).

On April 13, 2017, claimant filed her Complaint in this Court. (Doc. 3). On November 2, 2017, the Honorable Linda R. Reade, United States District Court Judge, referred this case to the undersigned for a report and recommendation. That same day, the Court deemed this case fully submitted and ready for decision.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since October 1, 2002, the alleged onset date of her disability. (AR 13).

At Step Two, the ALJ found that claimant had the severe impairments of "depression; anxiety; and borderline intellectual functioning." (AR 14). The ALJ further discussed claimant's other documented impairments and found that those impairments did not meet the definition of "severe" impairments under Social Security Administration regulations. (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the relevant regulations. (AR 15).

At Step Four, the ALJ found claimant had the residual functional capacity to perform a full range of work at all exertional levels with the following limitations:

> [claimant] is able to understand, carry out, and remember only simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any, work place changes. She cannot perform any fast moving assembly line-type work. She should have no interaction with the public. She can be around coworkers throughout the day, but with only brief incidental interaction with coworkers and no tandem job tasks.

(AR 17). Also at Step Four, the ALJ determined that claimant was unable to perform her past relevant work as a hand packager. (AR 23).

At Step Five, the ALJ determined that there were jobs that existed in sufficient numbers in the national economy that claimant could perform. (AR 24-25). Therefore, the ALJ found claimant not disabled.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it

possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant asserts that the ALJ erred in finding claimant not disabled. In support of this assertion, claimant argues that the ALJ failed to properly evaluate the work-related limitations set forth by Dr. Ali Safdar, M.D., and Dr. Harlan Stientjes, Ph.D., and that the ALJ's residual functional capacity assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source. I will address each argument in turn.

### A. *Work-Related Limitations from Dr. Ali Safdar*

Claimant argues that the ALJ should have given Dr. Safdar's opinions controlling weight because they are well-supported by the record and are not inconsistent with substantial evidence in the record. (Doc. 12, at 5-14). The ALJ, however, assigned "little weight" to the opinions of Dr. Safdar because he found they were not consistent with Dr. Safdar's own treatment notes "when the claimant has been on her psychotropic medications." (AR 22). Specifically, the ALJ assigned little weight to Dr. Safdar's opinions that claimant was unable to meet competitive standards in maintaining regular attendance and punctuality, completing a normal workday and workweek "without

7

interruptions from psychologically based symptoms," performing "at a consistent pace without an unreasonable number and length of rest periods," and dealing with the stress of semiskilled or skilled work. (AR 22). The ALJ further assigned little weight to Dr. Safdar's opinion that claimant would miss more than four days of work per month because of her impairments or treatment. (*Id.*).

Dr. Safdar treated claimant extensively, from 2001 to 2003, and again from October 2011, through at least July 2015. However, in spite of the lengthy treatment history, the ALJ failed to articulate how Dr. Safdar's treatment notes were inconsistent with his opinions. The ALJ discussed the bulk of these inconsistent treatment notes in a single paragraph:

> Upon mental status examination, Dr. Safdar noted the following pertinent findings regarding the claimant. She was alert and oriented and doing fairly well with her mood. She reported that she was feeling well and sleeping well. She had no problems with her medications and no suicidal ideations. Her speech was logical and her behavior was appropriate. Her psychotropic motor activity was normal and her insight and judgment were good.

(AR 22). Although the ALJ may have had a proper basis for considering these findings, these findings do not relate, specifically, to claimant's ability to function in the workplace. Nor does the ALJ articulate how Dr. Safdar's opinions regarding claimant's mental status affect claimant's ability to function in the workplace. Because the ALJ failed to show a connection between Dr. Safdar's overall mental health assessment and his opinions regarding claimant's ability to perform competitive work, the Court cannot find that the ALJ's determination of inconsistency is well-founded. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("[W]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." (quoting 20 C.F.R. § 404.1527(d)(2))). For the ALJ to have properly discounted Dr.

8

Safdar's opinions, the ALJ would have had to show why the treatment notes would necessarily lead to a conclusion other than the conclusion reached by Dr. Safdar. The ALJ did not do this.

Further, it is possible that any improvements claimant realized in her mental status were attributable to her unemployment. That is to say, it is possible that claimant's improvements—if any—were a direct result of not being exposed to any work-related triggering stimuli. In such a case, Dr. Safdar's opinions that claimant's mood was doing "fairly well" could be consistent with a finding that claimant was unable to maintain competitive employment. (AR 22). It is unclear, however, if the ALJ considered this and rejected the idea for an unstated reason, or whether the ALJ simply did not consider that this could be the case. Because the ALJ failed to explain how Dr. Safdar's opinions were internally inconsistent, I respectfully recommend that the Court reverse and remand the ALJ's decision. *Singh*, 222 F.3d at 452.

Aside from discussing claimant's reported unemployment (AR 479), Dr. Safdar's discussion of how claimant's mental impairments affected her ability to maintain employment was limited. On April 2, 2003, approximately six months after the alleged onset date of disability, Dr. Safdar noted "[claimant] has been working at the Worley Warehouse. She says that things have been going well. She hasn't missed any work recently." (AR 482). Although a statement indicating an ability to work is probative of whether claimant had the capacity to work, this statement was made nearly eleven years prior to Dr. Safdar opining that claimant would have difficulty in the workplace. (AR 970-74). This lapse in time is significant. Over the course of more than a decade, many things can change that can affect a medical provider's opinions. Indeed, claimant did experience many changes that may have affected her mental health. For example, claimant's husband passed away in October 2012. (AR 18).

Dr. Safdar's notes in 2003 could have been accurate at the time, just as his opinions rendered in 2014 regarding claimant's capacity to work could have been accurate. The differing opinions could be due to any number of factors, including a deterioration in claimant's condition, in which case Dr. Safdar's opinions would not have been inconsistent at all. However, the ALJ failed to address how claimant's potentially improved mental status was inconsistent with Dr. Safdar's opinions on claimant's ability to work. Improvement does not necessarily endow an individual with an ability to engage in substantial gainful activity. It would appear, however, that the ALJ did equate improvement with an ability to engage in substantial gainful activity.

Finally, claimant correctly notes that the ALJ's residual functional capacity assessment is materially different from the limitations imposed by Dr. Safdar. If the ALJ correctly discounted Dr. Safdar's opinions and simply failed to explain the rationale for doing so, these material differences can be considered a byproduct of granting Dr. Safdar's opinions less than controlling weight. If, however, the ALJ did not properly discount Dr. Safdar's opinions, these material differences are more likely erroneous. Based on the record, the Court is not in a position to make such a determination because it is unclear why the ALJ chose to discount Dr. Safdar's opinions. I respectfully recommend that the Court reverse and remand the ALJ's decision with instructions that the ALJ either give Dr. Safdar's opinions controlling weight or provide explicit reasons for assigning Dr. Safdar's opinions less than controlling weight.

### B. *Work-Related Limitations from Dr. Harlan Stientjes*

Claimant argues that the ALJ erroneously assigned no weight to the opinions of examining psychologist Dr. Stientjes. The ALJ gave no weight to Dr. Stientjes's opinions because the ALJ found claimant gave only modest effort during Dr. Stientjes's evaluation, and because "Dr. Stientjes's opinions [were] inconsistent with the findings set forth in the claimant's contemporaneous mental health treatment records and the other medical

records in evidence." (AR 21). Claimant, in turn, argues that Dr. Stientjes accounted for claimant's modest effort in rendering his opinions and that Dr. Stientjes reviewed claimant's treatment records and did not find those records to be inconsistent with his own opinions. (Doc. 12, at 16).

Dr. Stientjes noted that claimant put forth modest effort on only one set of numerous tests, the global intellectual ability tests, from which intelligence quotient ("IQ") scores were derived. (AR 979-80). In his summary opinion, Dr. Stientjes provided that claimant's "symptoms have been overwhelming and debilitating [for the last three years]," that "[a]n assessment of general cognitive abilities was conducted with scores consistent with impairment; however that is not consistent with history or presentation," and that claimant's "[p]rospect of attain[ing] and sustaining any employment is poor at this time, but better coordination of treatment . . . could improve quality of life and maybe even some gainful activity." (AR 981).

As an initial matter, Dr. Stientjes's statement that claimant's cognitive abilities scores were inconsistent with her history and presentation shows that Dr. Stientjes accounted for her "modest effort" in rendering his opinions. Had Dr. Stientjes not accounted for claimant's decreased effort, Dr. Stientjes likely would not have noted that the scores that were consistent with an impairment but were inconsistent with claimant's other medical records. Thus, by attributing no weight to Dr. Stientjes's opinions, in part, because of claimant's modest effort, this modest effort was counted doubly against claimant's applications for benefits—once by Dr. Stientjes and once by the ALJ. A disability determination is not supported by substantial evidence when some evidence is doubly counted against a claimant. It was, therefore, erroneous for the ALJ to rely on this modest effort in discrediting Dr. Stientjes's opinions.

Turning next to whether Dr. Stientjes's opinions were inconsistent with the treatment record as a whole, I find that they were not materially inconsistent with the

record as a whole, and any inconsistencies were accounted for by Dr. Stientjes. Although Dr. Stientjes may not have had the benefit of reviewing the May 14, 2014 report,[2] Dr. Stientjes's summary opinion indicates that he was aware that claimant's symptoms varied in severity. Specifically, Dr. Stientjes noted that claimant's mental health had become increasingly poor in the three years prior to Dr. Stientjes's evaluation, but that with "better coordination of treatment," claimant may be able to achieve gainful activity. Further, Dr. Stientjes notes on multiple occasions that claimant's blood sugar could have been partially to blame for her mental status, which may not have been as stable as it was a few days prior.

Most importantly, Dr. Stientjes took a long-term approach. The treatment notes contained in the record, to which the ALJ presumably referred to as being inconsistent, merely show a snapshot. Thus, although claimant may have been "quite happy" with "an improved mood and less anxiety and . . . sleep and appetite [that] were good" on May 14, 2014, this report is not indicative of claimant's long-term mental health. Dr. Stientjes's report, on the other hand, was intended to focus on claimant's long-term health and recognized that over the course of many years, claimant had experienced very difficult periods, as well as periods that indicated gainful activity would be possible in the future. The ALJ failed to recognize that Dr. Stientjes took a different approach. As a result, the ALJ found inconsistencies where there were none.

Generally an examining source's opinion is entitled to more weight than the opinion of a non-examining source, such as a state agency consultant who did not examine

---

[2] Claimant's medical records were transmitted to Dr. Stientjes on May 6, 2014. Therefore, while it is possible that Dr. Stientjes reviewed the May 14, 2014, report in preparing his own opinions, it is unlikely that Dr. Stientjes received this report in time to include it in his own opinions, if he received it at all. (Doc. 12, at 16 n.8).

the claimant.³ 20 C.F.R. § 404.1527(c)(1). Having found that both of the ALJ's reasons for discrediting Dr. Stientjes's opinions are without merit, I see no remaining reason as to why Dr. Stientjes's opinions should warrant less weight than the weight given to the opinions of non-examining sources on the same issues. Therefore, I respectfully recommend that the Court reverse and remand the ALJ's decision with instructions to grant Dr. Stientjes's opinions more weight than the weight given to non-examining sources' opinions on the same issues.

### C. *Residual Functional Capacity Assessment*

Claimant's final argument is that the ALJ's residual functional capacity assessment was flawed because it was not supported by substantial medical evidence from a treating or examining source. (Doc. 12, at 16-19). Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("It is true that we do not consider the opinions of non-examining consulting physicians *standing alone* to be 'substantial evidence.'" (emphasis added)). "'The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.'" *Combs v. Berryhill*, 868 F.3d 704, 708 (8th Cir. 2017) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

Here, however, the ALJ relied on some evidence, though limited, in addition to the non-examining state agency consultants' opinions. The ALJ attributed little weight to Dr. Safdar's opinions and further turned to individual medical reports throughout the decision to buttress the finding that claimant was not disabled. (*See* AR 17-23). The

---

³ Here, the ALJ considered the opinions of state agency psychological consultants Dr. Scott Shafer, Ph.D., and Dr. John Tedesco, Ph.D. (AR 23).

ALJ's decision indicates that the decision was largely based on the findings of the state agency consultants, who did not examine claimant, but the ALJ did not rely *solely* on the opinions of the non-examining state agency consultants. The issue raised by claimant is specifically that the evidence the ALJ relied on in reaching his opinion did not constitute substantial medical evidence on the record as a whole. Aside from addressing the opinions of Drs. Safdar and Stientjes, claimant does not contend that the evidence the ALJ relied on was inaccurate. Thus, the Court must consider whether the evidence the ALJ relied upon was sufficient, absent any potential errors contained therein.

Because the ALJ apparently did attribute Dr. Safdar's opinion little weight—which is greater than no weight—and the ALJ appears to have thoroughly reviewed the medical records and incorporated those records into his decision, I find that the ALJ's opinion could have been supported by substantial medical evidence on the record as a whole. However, because I have found that the ALJ erred with respect to his evaluation of Drs. Safdar's and Stientjes's opinions, I respectfully recommend that the Court reverse and remand the ALJ's decision to allow the ALJ an opportunity to reconsider whether his residual functional capacity assessment should be amended.

## VI. CONCLUSION

For the reasons set forth herein, I find that the ALJ failed to provide good reasons for the weight afforded to Drs. Safdar's and Stientjes's opinions. *Singh*, 222 F.3d at 452. Therefore, I respectfully recommend that the District Court **reverse and remand** the ALJ's decision with instructions to afford Drs. Safdar's and Stientjes's opinions greater weight or provide a valid explanation for discounting the weight afforded to them.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts

of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 15th day of November, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa